## RATHBORNE, HAIR & RIDGWAY COMPANY v. EMOGENE COFFRON AND ANOTHER.[1]

January 27, 1928.

No. 26,543.

**Valid extension of time for cutting and removal of timber was granted.**
 [1] From the circumstances connected with a writing purporting to confirm an agreement the inference is unavoidable that the agreement was made prior to the expiration of the time specified in two timber deeds for the cutting and removal of the timber therein conveyed; hence there was a valid extension of time, and the rights of plaintiff to the timber had not reverted.

**Writing quoted granted continued occupancy of land for removal of timber.**
 [2] It is also *held* that the writing so links itself with the deeds as to make them part of the transaction for a continued occupancy of the lands for the removal of the timber purchased by plaintiff.

**When time for removal is indefinite, court should fix a reasonable time.**
 [3] The time for such removal being indefinite courts construe that to mean a reasonable time, and that should be fixed by the court.

Logs and Logging, 38 C. J. p. 169 n. 92; p. 172 n. 33, 45.

See note in 15 A. L. R. 41; 31 A. L. R. 944; 42 A. L. R. 641.

Plaintiff appealed from an order of the district court for Itasca county, Torrance, J. denying its motion for a new trial. Reversed.
*Alfred L. Thwing,* for appellant.
*C. C. McCarthy,* for respondents.

HOLT, J.

Appeal by plaintiff from an order denying a new trial after findings in favor of defendants.

The action was brought to determine the adverse claims of defendants to the merchantable timber standing and being upon certain lands in Itasca county. The answer denied plaintiff's title to

[1]Reported in 217 N. W. 501.

the timber or right to enter, cut or remove the same, and averred defendants' sole ownership of both land and the timber thereon. Neither plaintiff nor defendants allege actual possession of the lands.

Of these facts there is no dispute:

On June 28, 1918, O. Wenaus, the owner of the land involved, executed and delivered a deed to plaintiff thereby granting and conveying to it and its assigns "forever, all the merchantable timber lying, standing or being upon" the land therein described, "together with the right to enter upon said land and cut and remove therefrom at any time within three years from the date hereof the timber herein conveyed, and to cut such other timber and make such other alterations on said lands as may be required in the cutting and removal of said timber." The deed also gave the grantee "the exclusive right of occupancy of said lands, for and during the terms aforesaid." The taxes levied during the term stated the grantee was to pay, until the timber was removed. When the timber had been removed from any tract the grantee might give notice thereof to the grantor, and from that time the obligation of the grantee to pay the taxes on such tract ceased.

Wenaus also, in August, 1918, executed a similar deed in every respect conveying the timber on certain other nearby tracts, the only difference being in the time fixed for removal, which was limited to two years from the date of that deed. No timber whatever has been cut on any part of the tracts described in the deeds.

On July 15, 1921, O. Wenaus signed and delivered to plaintiff this writing, exhibit D:

"Rathborne, Hair & Ridgway Co.,
"Deer River, Minn.

"Dear Sirs: This will confirm my agreement with you that you are at liberty to continue to occupy the lands covered by timber deed which you purchased from me and members of my family, so long as you continue to keep the taxes paid up." Then follows a description of the land the same as in the deeds (except some error in the description of one 40 and addition of an 80 by mistake, for the same are not included in the pleading).

About eight months thereafter Wenaus died. Defendants are his heirs. They stand in his shoes, and can assert no other defense than he had after exhibit D was delivered. That the decree of distribution in Wenaus' estate contains no reference to plaintiff's interest in the lands is of no moment, for the probate court could not determine it. The jurisdiction of that court extends only to a determination of the interests which a spouse, heir, legatee or devisee takes in the estate of a decedent.

[1] The findings of the court are assailed because they failed to cover all the issues upon which plaintiff requested findings. No fault can be found with the action of the court, if the claim and interest of plaintiff to the timber has terminated or reverted to defendants. But we think the dealings between plaintiff and Wenaus evidenced by the deeds, the exhibit D, and the payment of taxes by plaintiff subsequent to the dates set in the deeds for removing the timber all tend to show an intention of the parties to modify the condition subsequent in the deeds from a definite date to the indefinite one of so long as plaintiff should pay the taxes on the lands.

The situation of the parties should be kept in mind. The deeds acknowledge the receipt of the total consideration of $1,350. Hence the timber was fully paid for and belonged to plaintiff. Mathews v. Mulvey, 38 Minn. 342, 37 N. W. 794; Gulledge Brothers Lbr. Co. v. Wenatchee Land Co. 126 Minn. 176, 148 N. W. 43. The time specified in both deeds for the severance and removal of the timber was short—two years in the case of some of the tracts and three years as to others. This time was a condition subsequent which would cause a forfeiture of plaintiff's title to the timber and a reversion thereof to the grantor. In Mathews v. Mulvey, 38 Minn. 342, 344, 37 N. W. 794, where the condition subsequent was the same as in exhibit D, Chief Justice Gilfillan says the limitation as to the right to cut "is in the nature of a condition subsequent" and as such not to be favored, and held that the failure to pay taxes did not eo instante operate as a forfeiture of the uncut timber. And it is also settled law that there may be a waiver by parol or by conduct of a condition subsequent, and it should follow that by like method

there may be granted an extension of the time set for the taking effect of the condition subsequent.

The syllabus in McCue v. Barrett, 99 Minn. 352, 109 N. W. 594, is:

"Conditions subsequent are to be strictly construed and taken most strongly against the grantor. A forfeiture for a breach of a condition subsequent may be waived by acts as well as by express agreement, and once waived the grantor cannot take advantage of it."

[1-2] Now taking exhibit D, given after the time specified in the deeds for the removal of the timber, it clearly is indicative of the existence of some agreement by which the seller of the timber recognizes the purchaser's continued interest therein. And the inference seems unavoidable that such agreement was made before the expiration of the time set in both deeds for the removal of the timber, for the grantee continued to pay the taxes on the tracts described in both deeds notwithstanding the expiration of the time; and it is unthinkable that it would have so done, except pursuant to an existing agreement for an extension of time such as exhibit D is confirmatory of. Exhibit D satisfied the statute of frauds, and is in itself alone a perfectly valid agreement granting at least the right of occupancy. But therein Wenaus, the grantor, evidences more: namely, the continuance of such right of occupancy in plaintiff as was granted by "the timber deed [deeds] which you purchased from me and members of my family." Surely this means the timber and not the paper instruments. Had the words "and cut and remove the timber" been inserted after the phrase "at liberty to continue to occupy the lands covered by timber deed [deeds]" there could not be any doubt of the efficacy of the writing to effect at least an extension of time. The intention so to do seems apparent, and the parties acted on the assumption that such an extension had been agreed upon and was confirmed by the writing.

These words of Chief Justice Campbell, with whom concurred Justice Sherwood, in Williams v. Flood, 63 Mich. 487, 493, 30 N. W. 93, 96, involving the rights under a parol agreement to extend the time for cutting timber sold, are applicable:

"Whatever they [rights] were, they included an absolute sale of all the timber described, subject only to such qualifications of the right of removal as the contract mentions. At most, this condition would only operate by way of forfeiture. The timber had all been paid for, and all belonged to plaintiff unless lost by that forfeiture for non-removal. This being so, I think there is no more difficulty in showing a waiver of forfeiture in this than in any other case, whether the forfeiture relates to land, or its enjoyment, or any other interest. The parol agreement to extend the time for removal of plaintiff's own property was more than a revocable license. It prevented the enforcement of the forfeiture so long as it lasted, as it was entirely inconsistent with it. During that period plaintiff's vendor would be estopped from preventing him from entering the land and removing his property."

We are well aware of the fact that no waiver is pleaded, but ownership of the timber is asserted by plaintiff under deeds and under a writing which is confirmatory of a pre-existing valid extension of the time set in the deeds for the removal of the timber bought, thus showing that there had been no reversion of the timber under the operation of the condition subsequent. No case exactly on all fours with the one at bar has been called to our attention nor have we found any that is particularly helpful. Some aid may be gained from Ciapisci v. Clark, 12 Cal. App. 44, 106 P. 436; Gotham v. Wachsmuth Lbr. Co. 156 Wis. 442, 146 N. W. 505. An extensive annotation of cases bearing on the rights of parties under grants of timber stumpage is to be found in 15 A. L. R. pp. 71-117. The general rules in this state pertaining to the rights of the parties in the sale of standing timber are expressed in the cases already referred to and in King v. Merriman, 38 Minn. 47, 35 N. W. 570; J. Neils Lbr. Co. v. Hines, 93 Minn. 505, 101 N. W. 959; Alexander v. Bauer, 94 Minn. 174, 102 N. W. 387; International Lbr. Co. v. Staude, 144 Minn. 356, 175 N. W. 909; La Cook Farm Land Co. v. Northern Lbr. Co. 159 Minn. 523, 200 N. W. 801.

But we reach the same result were it assumed that the agreement of which exhibit D is confirmatory was made after June 28, 1921, when a reverter had occurred. The fact has already been adverted

to that exhibit D is a valid grant to plaintiff of the occupancy of the lands so long as it shall pay the taxes. It satisfies the statute of frauds. A contract is not necessarily confined to one writing. Exhibit D not only recognizes in terms the existence of a sale of the timber by Wenaus binding members of his family as well as himself, but refers to the "timber deed [deeds]," linking the occupancy granted in that writing to that in the deeds by the use of the word "continue." The situation of the parties at that time indicates that the sole object for the "continued occupancy" of plaintiff was to cut and remove the timber it had bought and fully paid for according to the provisions of the deeds referred to. At least there is nothing to suggest that plaintiff could make any other use of the occupancy, such as, for instance, hay or pasturage. It seems to us that exhibit D by reference incorporates or annexes the terms of the timber deeds, except as the time for removal of the timber is modified from a definite to an indefinite period.

[3] In line with Mathews v. Mulvey, 38 Minn. 342, 37 N. W. 794, and authorities generally, where timber contracts or deeds contain such indefinite time for the removal of the timber, it is to be construed to mean a reasonable time; and what is such is for the court to determine when appealed to, as it was in the instant case.

The order denying a new trial is reversed.